UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| **RONNIE ELLIS,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **NANCY A. BERRYHILL** ) <br> **Acting Commissioner of Social Security,** ) <br> ) <br> **Defendants.** ) | **CIVIL ACTION No. 4:18-cv-119** |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Ronnie Ellis ("Ellis") brought this civil action pursuant to 45 U.S.C. § 405(g), seeking judicial review of the decision by the Commissioner of the Social Security Administration ("Commissioner") to deny his claim for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("the Act"). Ellis argues that the Administrative Law Judge ("ALJ") who heard his claim erred in calculating his residual functional capacity ("RFC"). Ellis asserts that an RFC assessment limiting him to light exertion would have yielded a favorable disability determination. He therefore seeks remand for "vocational clarification about how limits on standing/walking in the ALJ's RFC may have actually resulted in the elimination of the medium occupational base."

This action was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). The matter is now before the court on the parties' cross-motions for summary judgment. For the reasons stated below, this Report recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 9), GRANT Defendant's Motion for Summary Judgment, (ECF No. 11), and AFFIRM the Commissioner's decision.

1

## I. Procedural History

Ellis filed his initial application for benefits on June 17, 2014, alleging a disability onset date of August 30, 2013. (R. at 182). He later sought to amend the onset date to December 28, 2014, the day before his 55th birthday. (R. at 30-31). The Social Security Administration ("SSA") denied his application on November 5, 2014, (R. at 103), and again on reconsideration on October 1, 2015, (R. at 116). Ellis then requested an administrative hearing before an ALJ. (R. at 130). The hearing before ALJ Maryann S. Bright took place May 18, 2017. (R. at 27). On August 30, 2017, the ALJ issued her decision denying benefits. (R. at 9). Ellis requested review of the ALJ's decision, (R. at 180-81), which the Appeals Council denied on July 18, 2018, (R. at 1). The ALJ's determination that Ellis was "not disabled" during the period covered by his application thus became the final decision of the Commissioner. Ellis then filed this civil action seeking review of that decision. The parties have briefed their respective summary judgment motions and the matter is ripe for review.

## II. Factual Background

### A. Plaintiff's Employment History

Ellis was born in 1957 and, amending his application as his attorney indicated during the hearing, turned 55 the day after his alleged disability onset date. (R. at 30-31). He reached 9th grade before joining the Job Corps, where he remained for 18 months. (R. at 33). While in the Job Corps, Ellis was in the brick mason class. (R. at 34-35). His past relevant work includes time as a maintenance worker doing painting and street repair, a general laborer at a shipyard, and a furniture mover. (R. at 35-39). These jobs sometimes involved lifting upwards of 40 pounds. (R. at 36-38).

### B. State Agency Assessments and Determinations

In his application, Ellis attributed his inability to work to problems with his shoulder, head, neck, and back. (R. at 57). At an October 23, 2014 consultative exam conducted by Dr. Sarbjot

Dulai, Ellis reported that a workplace injury 8 years prior resulted in a fractured collarbone as well as injuries to his head, neck, and back. (R. at 344). Since then he has experienced intermittent low back and neck pain. (R. at 344). He also experiences frequent muscle spasms in his low back with no specific triggers. (R. at 344).

Ellis told Dr. Dulai he had no difficulty with his walking and no limitations in activities of daily living. (R. at 344, 345). He said he could stand for "a couple of hours" at a time and could sit for about an hour at a time. (R. at 344). In his physical examination, Dr. Dulai did not record any abnormalities in vital signs, coordination, range of motion, or motor skills. (R. at 345-46). Dr. Dulai diagnosed Ellis with low back and neck pain. (R. at 346). His functional assessment stated that Ellis could be expected to stand or walk for 6 hours in an 8-hour day and had no limitations with sitting. (R. at 346). Ellis was able to lift 20 pounds frequently and 50 pounds occasionally. (R. at 346). He had occasional postural limitations with bending, crouching, and stooping due to the intermittent low back pain. (R. at 346).

Ellis had lumbar spine x-rays taken on October 27, 2014. (R. at 349). The results showed no fracture or dislocation. (R. at 349). Ellis had early degenerative spur formation at the L3-L4 vertebrae, but the interpreting physician did not identify any degenerative disk disease. (R. at 349).

State agency physicians reviewed Ellis's medical history and provided an assessment of his ability to function in the workplace. (See R. at 57-74, 77-100). In his assessment at the initial claim level, Dr. Richard Surrusco found that Ellis had a medically determinable impairment of degenerative disc disease. (R. at 61). Noting that Ellis's x-rays and physical examinations were normal, he said that Ellis was limited only by pain and spasms. (R. at 61). In his RFC assessment, Dr. Surrusco concluded Ellis was capable of occasionally lifting or pulling 50 pounds and could stand and/or walk up to 6 hours in an 8-hour workday. (R. at 62). Ellis's only postural limitation (frequent rather than unlimited) was in climbing ladders, ropes, or scaffolding. (R. at 62).

3

Concluding that Ellis could perform medium exertion work, the examiner applied Grid Rule 203.18 and concluded that Ellis was not disabled. (R. at 64).

On reconsideration by Dr. Thomas Phillips, the results largely mirrored the initial determinations. (See R. at 77-88). The reconsideration assessment added a secondary impairment of chronic obstructive pulmonary disease (COPD). (R. at 83). Ellis's exertional limitations were unchanged, while the only downgrade in postural limitations was the change in bending at the waist, from unlimited to frequent. (R. at 85). Dr. Phillips also noted limitations in exposure to fumes, odors, dusts, gases, and poor ventilation. (R. at 86). He again concluded that Ellis was capable of medium exertion work. (R. at 86). Ellis's application was therefore denied again on a finding that he was not disabled. (R. at 88).

C. **Plaintiff's Relevant Medical History**

On April 21, 2015, Ellis underwent an examination in response to his complaints of back and neck pain. (R. at 363). The attending physician noted pain and tenderness in Ellis's back but normal presentation in his neck. (R. at 364). The examination also revealed an abnormal mass in Ellis's left upper arm. (R. at 364). Other physical checks such as range of motion, strength, and gait were normal. (R. at 364). Radiological testing showed some indication of pleural thickening or trapped fluid in the chest. (R. at 364-65). The examination report listed a primary diagnosis of "acute exacerbation of chronic back pain" with additional diagnoses of degenerative disc disease, lumbar; pleural effusion; pleural mass; and an upper arm mass. (R. at 368). The doctor prescribed medication for the pain and muscle spasms. (R. at 369). The mass in Ellis's arm was later identified as a benign tumor (lipoma) and was surgically removed in August 2015 without complications. (R. at 385-86).

An examination on May 29, 2015 reported no new physical problems, with normal range of motion in Ellis's neck and back and no acute pain or tenderness. (R. at 382). The chest abnormality also appeared to be resolving. (R. at 382-83).

Ellis presented with chest pain on July 19, 2015 and underwent another evaluation. (R. at 389). This examination focused on his thoracic symptoms, but the physical exam reported 5/5 muscle strength and 2/4 reflexes throughout. (R. at 392). Ellis's cardiopulmonary presentation was normal, and testing revealed no signs of pulmonary embolism. (R. at 392). The report estimated that the chest pain and abnormalities seen in prior screening could be due to pneumonia. (R. at 392). The attending physician scheduled a chest MRI to examine a mass on follow-up from Ellis's April examination. (R. at 393). The MRI revealed a small pleural effusion, but Ellis had only mild symptoms of shortness of breath. (R. at 394).

On September 2, 2015, Ellis treated with Southeastern Virginia Health System ("SEVHS") for his back pain and lingering pain from his lipoma surgery. (R. at 429). The attending physician noted that Ellis had been referred to a thoracic surgeon regarding his chest mass but that he cancelled the appointment. (R. at 429). Ellis reported that he continued to smoke and had occasional shortness of breath, but the assessment described no other physical symptoms. (R. at 430). The physician listed diagnoses of backache, COPD, and tobacco use disorder and prescribed medication. (R. at 430).

Subsequent examinations at SEVHS were largely consistent with these findings. (See R. at 435-66 (records from examinations between October 2015 and February 2017). Ellis sometimes complained of pain or numbness in his back, but the examining physicians made no notes of abnormalities and generally prescribed exercise and medication. (See R. at 442, 444, 457, 461). Ellis underwent a lumbar spine MRI on August 21, 2016, which revealed a mild disc bulge without herniation. (R. at 486). The report listed a diagnosis of degenerative disc disease. (R. at 486).

Ellis had a non-cancerous mass removed from his left chest wall via surgery on March 30, 2016. (R. at 488). He experienced some chest pain in the aftermath of the procedure and was prescribed additional medication. (R. at 455, 492). A CT scan in March of 2017 showed no evidence of ongoing pathology. (R. at 474).

### III. Standard of Review

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the Commissioner applied the proper legal standard in evaluating the evidence. See 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It may be less than a preponderance of evidence but is more than a "mere scintilla." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 390. Reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. Analysis

The issue in this case is whether substantial evidence supported the ALJ's finding that Ellis was capable of some medium-exertion work. Ellis presents a narrow issue on review. He argues that the VE's testimony during the hearing created an ambiguity that undermines the ALJ's determination. Specifically, he argues that the VE's testimony was ambiguous as to the impact of standing restrictions in eroding jobs available at the medium exertion level. Ellis asserts that remand is necessary for clarification of the VE's testimony. After review, I conclude that the ALJ's opinion was not affected by any ambiguity and is supported by substantial evidence. This Report therefore recommends the Commissioner's final decision be affirmed.

### A. Framework for SSA Disability Evaluation

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a five-step sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4) directs the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. If the analysis reaches step four, the ALJ will first make a finding on the claimant's RFC using all relevant evidence, medical and otherwise. 20 C.F.R. §§ 404.1520(e), 404.1545. A claimant's RFC is the most an individual can do despite the physical and mental limitations on his or her ability to do work. See Lewis v. Berryhill, 858 F.3d 858, 861-62 (4th Cir. 2017). Residual capacities "must be expressed in terms of work-related functions" when assessing a claimant's RFC. SSR 96-8p, 61 Fed. Reg. 34,474, at 34,477 (July 2, 1996).

The claimant bears the burden of proof during the first four steps. If the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 4:16cv38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir.

1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

### B. ALJ Hearing and Decision

At the hearing before the ALJ, Ellis testified that he ordinarily got around by public transportation or by bicycle. (R. at 32). He said he tried to bike every day but hadn't been doing so recently (R. at 32). Ellis testified that he had mostly stopped smoking, drinking, and using marijuana around March 2016 when he had surgery. (R. at 41).

According to Ellis, his back pain was easily triggered by a variety of actions, whether lifting, moving, or even just sitting still. (R. at 42). He had pain every day. (R. at 42). He also complained of numbness in his right leg that would occur after standing for too long. (R. at 42-43). This numbness and pain made it difficult for him to sleep. (R. at 43). On examination from his attorney, Ellis estimated he could stand for about 30 minutes at a time before he would feel the need to sit down. (R. at 45).

Ellis indicated he was able to perform household chores. (R. at 44). He said his hobbies included fishing and crabbing, which he tried to do every day according to the weather. (R. at 44).

The ALJ then heard testimony from vocational expert (VE) Robert Edwards. The ALJ proposed a hypothetical individual with skills and experience similar to Ellis's and the following limitations:

> [C]apable of medium exertion, specifically lifting, carrying, pushing, and pulling 50 pounds occasionally, 25 pounds frequently, capable of standing and/or walking approximately six hours per eight-hour workday and sitting approximately six hours per eight-hour workday with normal breaks, capable of frequent stooping and frequent climbing of ladders, ropes, or scaffolds. The individual should avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases, and poorly ventilated areas.

(R. at 47). The VE opined that such a hypothetical person would not be able to perform any of Ellis's past work. (R. at 47). He then offered three alternative jobs such a person would be able to

do, including grocery bagger, dining room attendant, and merchandise deliverer. (R. at 48). The ALJ posed several additional hypothetical limitations which the VE opined may affect the number or type of jobs available but would not foreclose all work. (See R. at 48-51).

Ellis's attorney asked the VE whether the medium-exertion jobs he had described would be available if the hypothetical person under consideration required a sit/stand option and could only stand for 30 minutes before having to sit for 10-15 minutes. (R. at 51). Describing such a person, Ellis's attorney said, "So we have somebody that in the course of an eight-hour day could probably be on their feet between maybe four to five hours but the other three to four hours a day would probably have to be in some form of a seated position."[1] (R. at 51). The VE responded that such a limitation would eliminate the jobs he had described but that some other medium-exertion jobs would remain available. Specifically, he identified cashier as an available position but noted that it would require standing "more than four to five hours at a shift." (R. at 51-52). In his closing statements, Ellis's attorney insisted that the proper RFC in the case was light exertion, rather than medium. (R. at 52).

The ALJ's opinion first concluded that Ellis met the insured status requirements under the Act and had not engaged in substantial gainful activity since the alleged disability onset date. (R. at 14). The ALJ found that Ellis suffered from lumbar degenerative disc disease and COPD, both severe. (R. at 15). Neither condition met the criteria of any listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. at 15-16).

The ALJ concluded that Ellis's RFC permitted less than the full range of medium work as defined in the regulations. (R. at 16). In support of this determination, the ALJ recounted Ellis's

---

[1] The math error in this example is central to Ellis's argument. See infra Part IV.C.

medical history, noting that physical examinations, x-rays, and other tests were consistently normal or showed at most mild abnormalities. (R. at 17-18). The ALJ also observed that Ellis's primary complaint during the alleged period of disability was pain, and that his medically determinable impairments had improved with treatment. (R. at 19).

After concluding that Ellis was unable to perform any past relevant work, the ALJ consulted the Medical-Vocation Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 [hereinafter "Grid Rules"]. (R. at 21). Because Ellis was unable to perform the full range of medium work, the ALJ used the Grid Rules as a framework and relied on the VE testimony. (R. at 21). Crediting the VE's testimony that certain medium-exertion jobs were available to a person with Ellis's RFC, the ALJ determined that Ellis could adjust to other work that exists in significant numbers in the national economy. (R. at 22). Accordingly, the ALJ found that Ellis was not disabled during the alleged period and denied his application. (R. at 22).

**C.       Substantial Evidence Supports the ALJ's Decision to Deny Disability Benefits**

Importantly, Ellis does not contest the ALJ's RFC finding or argue that the medical evidence suggests he is more limited than the ALJ described. Instead, his argument relies on the alleged ambiguity in the VE's testimony describing available positions and on application of the Medical-Vocational Guidelines, or "Grid Rules." The Grid Rules direct a finding of disabled or not disabled based on four relevant factors identified by Congress: physical ability, age, education, and work experience. Grid Rules § 200.00(a); Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). When a claimant's vocational profile meets all the criteria in a given rule, the Grid Rules direct a specific finding of disabled or not disabled. Grid Rules § 200.00(a); Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983). If a claimant's profile does not match all the criteria of any single rule, the ALJ must consider "all of the relevant facts of the case." Grid Rules § 200.00(a).

11

Ellis notes that if his RFC had been limited to light-exertion work, Grid Rule 202.02 would have directed a finding of "disabled."[2] His argument suggests that the evidence before the ALJ eliminated all the medium-exertion jobs proffered by the VE as available to Ellis, given his limitations as described in the RFC. The ambiguity requiring remand comes from a math error by Ellis's counsel during examination of the VE at the hearing. Counsel incorrectly quantified the hypothetical person needing a sit/stand option—that is, needing to sit for 10-15 minutes every half-hour—as needing to sit "three to four hours" per day. (R. at 51). The VE opined that such a limitation would eliminate most medium-exertion jobs, including those he previously identified. (R. at 51). Ellis now argues that it is unclear which part of the question the VE's opinion—that certain medium duty jobs would be eliminated—rested on. If the VE was responding to the hypothetical person who must sit for 10-15 minutes every 30 minutes, Ellis contends, it undermines the ALJ's finding as to disability. According to Ellis's brief in this court, this hypothetical restriction "requires having to sit on occasion at 10-15 minutes per hour (which is sitting 17-25% of the work shift ...)." Pl.'s Br. Supp. Mot. S.J. 6 (ECF No. 10).

This argument fails for two reasons. First, it depends on a mischaracterization of counsel's question to the VE, at least as laid out in Ellis's brief. Ellis's premise is that the first part of counsel's cross-examination question "almost perfectly mirrors" the ALJ's RFC determination. It does not. The restatement in Ellis's brief—"having to sit on occasion at 10-15 minutes per hour"—is not equivalent to the question from the hearing—required to sit at least 10 to 15 minutes <u>every half-hour</u>. And the hypothetical question from the hearing is more restrictive than the RFC: it only mirrors the standing limitations reflected in the RFC at the very bottom of its range and

---

[2] Grid Rule 202.02 applies to claimants of advanced age, limited or less education, skilled or semiskilled work experience with nontransferable skills, and limited to light-exertion work.

incorporates a sit/stand option that is absent from the RFC. (See R. at 51-52 (response from VE noting that medium jobs may be eliminated due to lack of a sit/stand option "as [Ellis's counsel] described it")). Thus, even if the VE's testimony responded to the 10 to 15-minute portion of the hypothetical question, it is of limited relevance because it does not accurately represent the ALJ's RFC determination, which Ellis has not otherwise challenged.

Second, the ALJ's fact-specific disability determination has substantial support in the record from both the objective medical evidence and other VE testimony. Ellis's medical records do not indicate any conditions or impairments that would limit his ability to perform medium work. His principal complaint throughout the record has been pain, and he has treated it with medication. State agency physicians reviewed much of this evidence and nonetheless determined that Ellis had only mild functional limitations. In fact, the ALJ's RFC determination included slightly greater limitations than prior assessments. In reaching this determination, the ALJ properly addressed both the objective medical evidence and the opinion evidence. The ALJ also explained the weight she gave to the various opinions and to Ellis's subjective statements regarding his impairments. (See R. at 17-20). Ellis's brief in support of remand does not address any of these findings or point to any medical evidence suggesting he was more limited.

"An exertional limitation is one which manifests itself by limitations in meeting the strength requirements of jobs." Gory, 712 F.2d at 930; see also Grid Rules § 200.00(e). The ALJ properly concluded that, considering his various limitations, Ellis was capable of some but not all medium work. This is consistent with the medical evidence relating to Ellis's ability to frequently lift, carry, and push certain weights and his consistently normal strength evaluations. The ALJ did not impose a sit/stand option other than limiting total standing or sitting time to 6 hours in an 8-hour day. The hypothetical need for a different sitting/standing distribution contemplated by

13

counsel does not change this determination, even though it may affect the availability of certain work. In short, the ambiguity Ellis alleges does not exist, and concerns only an ancillary point.

Furthermore, any ambiguity in counsel's question was harmless given the rest of the evidence. The VE's testimony directly supports the ALJ's conclusions regarding work availability. The ALJ's first hypothetical specifies a need to sit for 2 hours per 8-hour day. The VE responded that substantial medium work would still be available. And even in response to counsel's erroneous hypothetical, the VE still indicated that certain medium-exertion jobs would likely be available. (R. at 51). The ALJ credited this testimony in concluding that while Ellis was capable of some medium work, his "ability to perform all or substantially of the requirements of this level of work has been impeded by additional limitations." (R. at 21).

Given this finding, declining to apply Grid Rule 202.02 to direct a conclusion on disability was not error. Because the VE's unambiguous testimony demonstrated that medium work was available for someone with Ellis's RFC, the criteria of that Rule were not satisfied and applying it would have been error. See Grid Rules § 200.00(a). Instead, using the rules as a framework, the ALJ properly considered "all of the relevant facts" and concluded that Ellis was not disabled. Id. The record providing substantial evidence to support it, this court is bound to affirm the Commissioner's decision. Mastro, 270 F.3d at 176.

## Conclusion

For the foregoing reasons, this Report finds that the decision of the Commissioner is supported by substantial evidence. The court should therefore GRANT the Commissioner's Motion for Summary Judgment, (ECF No. 11), DENY Ellis's Motion for Summary Judgment, (ECF No. 9), and affirm the final decision of the Commissioner.

## Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of service of this report on the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
May 2, 2019